UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 10-54896 |
| | ) | |
| ALISA R. JAMES | ) | CHAPTER 7 |
| | ) | |
| DEBTOR | ) | JUDGE MARILYN SHEA-STONUM |
| | ) | |
| | ) | MOTION OF |
| | ) | BFG FEDERAL CREDIT UNION |
| | ) | FOR RELIEF FROM STAY AND ABANDONMENT |
| | ) | |
| | ) | **2002 CHEVROLET IMPALA** |

BFG Federal Credit Union (the "Movant") moves this Court, under §§ 361, 362, and 363, and other sections of Title 11 of the United States Code, and under Federal Rule of Bankruptcy Procedure 4001 and 6007 for an Order conditioning, modifying or dissolving the automatic stay imposed by Bankruptcy Code § 362, and for abandonment of property under Bankruptcy Code § 554.

## MEMORANDUM IN SUPPORT

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). The venue of this case and this Motion is proper under 28 U.S.C. §§ 1408 and 1409.

2. On September 30, 2005, Debtor obtained a loan from BFG FEDERAL CREDIT UNION in the amount of $11,200.00. Such loan was evidenced by a Note dated September 30, 2005, a copy of which is attached as Exhibit A.

3. To secure payment of the Note and performance of the other terms contained in it, the Debtor executed one Security Agreement in favor of BFG Federal Credit Union dated September 30, 2005 (the "Security Agreement"). The Security Agreement granted a lien on the 2002 CHEVROLET IMPALA owned by ALISA R. JAMES (the "Collateral"). The Collateral is more fully described in the Security Agreement (check one):

☐ attached as Exhibit B;

OR

☒ contained in the Note, attached as Exhibit A.

4. The lien created by the Security Agreement was duly perfected by:

☐ Filing of the Security Agreement in the office of the _____ County Recorder on _____.

☐ Filing of the UCC-1 Financing Statement in the office of _____ on _____.

☒ Notation of the lien on the certificate of title.

☐ Other (state with particularity) _____.

A copy of the recorded Security Agreement, UCC-1 Financing Statement, Certificate of Title or other document, as applicable, is attached as Exhibit B. Based on the Certificate of Title, the lien is the 1st lien on the Collateral.

5. The entity in possession of the original Note as of the date of this motion, is BFG Federal Credit Union.

6. The entity servicing the loan is: BFG Federal Credit Union.

7. The Note and Security Agreement was transferred, as evidenced by the following:

    a. If the Collateral is real estate:

        i. Under Uniform Commercial Code § 3-203(a) as applicable under state law in effect where the property is located, from the original lender (check only one):

☐ N/A.

OR

☐ By endorsement on the Note, payable to _____.

OR

☐ By blank endorsement on the Note, payable to _____.

OR

☐ By allonge attached to the Note, payable to _____.

OR

☐ By blank allonge, attached to the Note.

OR

☐ The Note is not endorsed to the Movant, or is not endorsed in blank with an allegation that the Movant is in possession of the original Note. The factual and legal basis upon which the Movant is entitled to bring this motion is

(explain with particularity and attach supporting documentation):_____.

OR

☐ By endorsement on the Note or by allonge attached to the Note, through a power of attorney. If this box is checked, a copy of the power of attorney is attached as Exhibit _____. Explain why it provides Movant the authority to endorse the Note: _____.

ii. Under Uniform Commercial Code § 3-203(a) as applicable under state law in effect where the property is located, from the _____ to _____

iii. A court has already determined that Movant has the ability to enforce the Note with a judgment dated _____ in the _____. A copy of the judgment is attached at Exhibit _____.

iv. Other _____ [explain].

b. If the Collateral is not real estate (check one):

☒ N/A.

OR

☐ From the original lender to _____ by _____.

8. The Security Agreement was transferred as follows:

☒ N/A.

OR

☐ From the original lender, mortgagee, or mortgagee's nominee on _____ to _____. The transfer is evidenced by the document(s) attached to this Motion as Exhibit _____.

9. The value of the Collateral is $6,575.00. This valuation is based on NADA Book Value.

10. As of the date of this Motion, there is currently due and owing on the Note the outstanding balance of $2,221.41, plus interest accruing thereon at the rate of 5.49 percent per annum [$.34 PER DAY] from December 10, 2010, as described in more detail on the worksheet. The total provided in this paragraph cannot be relied upon as a payoff quotation.

11. The amount due and owing on the Note as set forth in paragraph 10 does not include a credit for the sum held in a suspense account by the Movant. The amount of the credit

is $0.00.

12. Other parties known to have an interest in the Collateral besides the debtor(s), the Movant, and the trustee are (check all that apply):

- ☒ N/A.
- ☐ The _____ County Treasurer, for real estate taxes, in the amount of $_____.
- ☐ Co-Owners, if applicable
- ☐ Any other party holding a lien, if applicable

13. The Movant is entitled to relief from the automatic stay under Bankruptcy Code § 362(d) for these reason(s) (check all that apply):

- ☐ Debtor has failed to provide adequate protection for the lien held by the Movant for these reasons: _____.
- ☐ Debtor has failed to keep the Collateral insured as required by the Security Agreement.
- ☐ Debtor has failed to keep current the real estate taxes owed on the Collateral.
- ☒ Debtor has failed to make periodic payments to Movant since the commencement of this bankruptcy case for the months of August 2010 through November 2010, which unpaid payments are in the aggregate amount of $904.40 through December 10, 2010. The total provided in this paragraph cannot be relied upon as a postpetition reinstatement quotation.
- ☐ Other cause (set forth with specificity): _____.

14. Movant has completed the worksheet, attached as Exhibit C.

15. Movant is entitled to an order directing the trustee to abandon the Collateral under 11 U.S.C. § 554(b) for these reasons (check all that apply):

- ☐ The Collateral is burdensome to the estate because _____.
- ☒ The Collateral is of inconsequential value and benefit to the estate because upon liquidation of the Collateral no proceeds will remain for the benefit of the estate.

WHEREFORE, Movant prays for an order from the Court:
- (a) Granting Movant relief from the automatic stay of Bankruptcy Code § 362 to permit Movant to proceed under applicable nonbankruptcy law.
- (b) Authorizing and directing the Chapter 7 Trustee to abandon the Collateral under Bankruptcy Code § 554.

Respectfully submitted,

/s/ Jamie M. Nagle
Jamie M. Nagle, (0075205)
Attorney for BFG Federal Credit Union
Weltman, Weinberg & Reis Co., L.P.A.
323 W. Lakeside Avenue, Suite #200
Cleveland, OH 44113-1099
216-739-5121
ecfndoh@weltman.com

# CERTIFICATE OF SERVICE

The undersigned certifies that on December 13, 2010, a true and correct copy of the foregoing Motion of BFG Federal Credit Union for Relief from the Automatic Stay and Abandonment was via the Court's electronic case filing system on the following who are listed on the Court's Electronic Mail Notice List:

Robert M. Whittington, Jr., Esq.

Harold A. Corzin, Trustee

OFFICE OF THE UNITED STATES TRUSTEE

and by regular U.S. Mail, postage prepaid, to:

ALISA R. JAMES
P.O. Box 13373
Fairlawn, OH 44334

/s/ Jamie M. Nagle
Jamie M. Nagle, (0075205)
Weltman, Weinberg & Reis Co., L.P.A.
Attorney for BFG Federal Credit Union



**BFG Federal CREDIT UNION**
445 South Main Street
Akron, Ohio 44311

## Note and Disclosure Statement

In this Agreement the words you and your mean any person signing the Agreement. If more than one person signs, each will be responsible for repaying the loan in full. The terms on the following pages are part of the entire agreement. Items preceded by a box " ☐ " are applicable only if checked.

Borrower Name(s) and Address:
ALISA R JAMES
1063 NOME Ave
AKRON OH 44320-2621

Effective Date: 09-30-2005
Maturity Date: 11-30-2010

☐ New  ☐ Refinanced

### TRUTH-IN-LENDING DISCLOSURE

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS** The amount you will have paid when you have made all payments as scheduled. |
|---|---|---|---|
| 5.490 % | $ 1,767.18 | e $ 11,200.00 | $ 13,319.45 |

PREPAYMENT: If you pay off early, you will not have to pay a penalty.

REQUIRED DEPOSIT: The Annual Percentage Rate does not take into account your required deposit, if any.

### PAYMENT SCHEDULE

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE (Beginning Monthly) |
|---|---|---|
| 59 | $222.00 | 12-30-2005 |
| 1 | $221.45 | 11-30-2010 |

Variable Rate: N/A

LATE CHARGE: 5% of monthly loan payment on every payment over 15 days past due.
PROPERTY INSURANCE: You may obtain property insurance from anyone you want that is acceptable to the Credit Union.
SECURITY: You are giving a security interest in your shares and accounts in the Credit Union and the following:
☒ The goods or property being purchased    ☐ Collateral securing other loans will also secure this loan.
☐ Other (Describe)

See your contract documents for any additional information about non-payment, default, and any required re-payment in full before the scheduled
"e" means an estimate

**SECURITY**
You grant the Credit Union a security interest in your share, share draft and other accounts in the Credit Union (other than those accounts that would lose special tax treatment under State or Federal Law if this Security Agreement applied to them) and the property described below:

| YEAR | MAKE | MODEL | IDENTIFICATION NUMBER | TYPE |
|---|---|---|---|---|
| 2002 | CHEVROLET | IMPALA LS | 2G1W855K729258625 | |

OTHER
_____ You Pledge Shares and/or Funds of $ 0.00 _____ In Account No.(s) 0

**PROMISE TO PAY**
You promise to pay $ 11,200.00 plus initial interest on the unpaid balance at rate of 5.490 % per year until the loan is repaid. If your loan has a variable interest rate, the interest rate is tied to the movement of the Index shown in the disclosure above.

**ITEMIZATION OF THE AMOUNT FINANCED** The credit union or an entity affiliated with the credit union may retain a portion of the amount paid to others as noted by asterisk (*).

| Itemization of Amount Financed of $11,200.00 | Amount Given to You Directly $0.00 | Amount Paid on Your Account $0.00 | Prepaid Finance Charge $0 |
|---|---|---|---|
| Amount Paid to Others on Your Behalf $ 11,200.00 | TO NUVELL FINANCIAL SERVICE | $ TO | $ TO |

**CREDIT INSURANCE DISCLOSURE**
Credit Life and/or Credit Disability Insurance is not required to obtain credit under this plan and will be included only if requested immediately below by the APPLICANT(S). You are not eligible for insurance if you will attain age 76 prior to the Scheduled Expiration Date of insurance. For disability insurance you must be actively at work full time for wages or profit for the insurance to take effect. "Full time" means a regular workweek of not less than 30 hours per week for at least 14 consecutive days immediately prior to the effective date of insurance. Joint Life coverage covers the Borrower and the Co-Borrower. Your Co-Borrower is not eligible for Disability Insurance. If Coverage is selected and you are eligible, you will be charged a premium and given a Certificate of Insurance from Life Investors Insurance Company of America, which provides the important terms of this coverage. Read it carefully. If you do not check "Yes" below, no coverage will be added or in force. This insurance product is not insured by an agency of the federal government and the insurance is not guaranteed by the Credit Union.

INSURANCE APPLIED FOR:       Estimated Premium

| x Yes ___ No | Single Life | $ 352.27 |
| ___ Yes x No | Joint Life | $ 0.00 |
| ___ Yes x No | Single Disability | $ 0.00 |
| ___ Yes x No | Joint Disability | $ N/A |

X _Alisa R James_  PROPOSED INSURED    DATE OF BIRTH
X _____ PROPOSED JOINT INSURED    DATE OF BIRTH

** If you elected to purchased Credit Life and/or Disability Insurance, the premium stated in the credit insurance disclosure above is included in the Total of Payments.
NOTICE: We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may reflect in your credit report.
SIGNATURE: By signing below, you agree to make and be bound by this Note and Security Agreement including terms and conditions on the reverse. You acknowledge your responsibility to insure that the Credit Union is named as first lienholder on any certificate of title, if applicable. *If you are not a borrower but an owner of the collateral for this loan, sign below as the "Owner of Collateral." By doing so you agree only to the terms of the Security Agreement.*

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.
THE UNDERSIGNED HAS ENTERED INTO A WRITTEN AGREEMENT WITH THE CREDIT UNION. THE WRITTEN AGREEMENT IS A FINAL EXPRESSION OF THE AGREEMENT BETWEEN THE UNDERSIGNED AND THE CREDIT UNION. THIS WRITTEN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY ORAL AGREEMENT OR ALLEGED ORAL AGREEMENT. THE UNDERSIGNED ACKNOWLEDGES RECEIPT OF A COPY OF THIS NOTICE AND AGREE THAT ONLY THE WRITTEN CREDIT AGREEMENT CONTAINS THE TERMS APPLICABLE TO THE CREDIT TRANSACTION.

| BORROWER ALISA R JAMES | DATE | OWNER OF COLLATERAL | DATE |
|---|---|---|---|
| X _Alisa R James_ (seal) | 7/30/05 | (seal) | |
| CO-BORROWER X (seal) | DATE | WITNESS X | |

BFGRCU Copy- Page 1
Copyright 1997 ConmarSystems, Inc., Peachtree City, GA 30269 - EFORM 54287-4 Rev. 11/04 Form No. CE09030OH-FRCL

# SECURITY AGREEMENT

FOR FILING OFFICE
(Date, Time, Number, Filing Officer)



BFG Federal
CREDIT UNION

445 South Main Street
Akron, Ohio 44311

**BORROWER(S) NAME AND ADDRESS**

ALISA R JAMES
1063 NOME Ave
AKRON OH 44320-2621

| EFFECTIVE DATE | MEMBER NUMBER | NOTE NUMBER |
|---|---|---|
| 09-30-2005 | | |
| MATURITY DATE | | |
| 11-30-2010 | ☐ New | ☐ Refinanced |

**SECURITY INTEREST:** By signing this Agreement and receiving the benefits of your loan described on the reverse side, you are giving the Credit Union a security interest in the property described on the reverse side, and all present and future shares you have in any account in the Credit Union on which you have an interest. Under the Federal Credit Union Act, we have a statutory lien on your shares and other deposits. This means the credit union may place a lien on (freeze) your present and future shares, share certificates and dividends to the extent of that portion of your loan that is in default. You are also giving a security interest in all present and future checking accounts you have with the Credit Union. You authorize the Credit Union to take that money and apply it to what you owe if you are in default. The Credit Union may, but does not have to, allow you to withdraw a portion of your shares or funds without affecting its security interest. You are not giving a security interest in any shares or monies in any IRA, SEP, KEOGH, or any other account which, if pledged would result in the loss of special tax treatment under the Internal Revenue Code. This security interest covers not only that property but all proceeds, substitutions or replacements, accessions, improvements, all proceeds from insurance and all refunds of unearned premiums. The security interest also includes any replacements for the property which you buy within 10 days of this loan or any extensions, renewals, or refinancing of the loan. Any time this Agreement refers to collateral, it means any or all of the property described on the reverse. You are giving this interest to secure repayment of your loan as well as any other amounts you now owe or will owe the Credit Union. If the collateral is household goods as defined in the Federal Trade Commission Fair Credit Practices Rule, it only secures obligations for the purchase money for that collateral or a refinancing or consolidation of such obligations. However, cross collateralization does not extend to any dwelling.

**CROSS COLLATERALIZATION:** You hereby grant a security interest to the Credit Union in all assets and collateral separately pledged to the Credit Union as collateral for this, or any loan transaction. You further agree that any security interest granted to secure this loan shall also collateralize any other indebtedness that you may now have or may have in the future with the Credit Union. It is the intention of this grant to provide for cross-collateralization. To further secure the payment of this loan and all other indebtedness to the Credit Union now owed or hereafter owed by you, whether or not said indebtedness was intended to be secured or personal, you grant a security interest to the Credit Union in all assets or whatever nature and kind that are pledged hereby as collateral for the within indebtedness. This provision is intended to create cross-collateralization.

**PROTECTION OF COLLATERAL:** You promise that you will use the proceeds of the loan to buy the

if you do not make your payments as required, or if any other event described in the Default and choice, unless the Credit Union, for good cause, refuses to accept it. You agree that if the Credit Union does not receive a copy if your policy within 30 days, and in deductible amounts acceptable, it is authorized to obtain any kind of insurance to protect the Credit Union from financial loss. This could result in less protection for you and at a higher cost. The Credit Union will add the premium for this insurance to the applicable loan account and charge you a FINANCE CHARGE at the applicable rate. You agree that the Credit Union, at its option, may amortize the cost of collateral protection insurance for the policy term of coverage and increase your scheduled payment by the resulting amount. You promise to have any insurance policy payable to the Credit Union and, if asked, to deliver it to the Credit Union. The policies for such insurance must say that the Credit Union is to be paid if there is a loss. If the Collateral is lost or damaged, the Credit Union can use the insurance proceeds to replace or repair it, or to repay any amounts you owe the Credit Union. You also promise to pay all taxes due on the collateral. If you fail to do so, the Credit Union may, but does not have to pay the taxes and add the amount to the unpaid principal balance of the loan and charge you a FINANCE CHARGE at the same rate as your loan.

**DEFAULT:** You will be in default if you break any promise made under the security agreement or if you are in default on your loan. If you are pledging property as an other owner of collateral, you will be in default if anyone who signed or otherwise authenticated the Note is in default.

**DEFAULT REMEDIES:** When you are in default and after expiration of any right you have under applicable state law to cure your default, the credit union can require immediate payment of your outstanding balance. You agree that the credit union has the right to take possession of the property without judicial process, and you authorize a right of entry (other than to a dwelling) for repossession. The credit union will not be responsible for any personal property not covered by this Agreement that you leave inside the property or that is attached to the property. The credit union will try to return that property to you. After the credit union takes repossession of the property, the credit union can sell it and apply the money to what you owe. The credit union will give you notice of any public sale or the date when a private sale will be held. The credit union will deduct its expenses for taking possession of the property and for any commercially reasonable preparation or processing, storage and reasonable attorney's fees to the extent permitted under state law or awarded under Bankruptcy Code. The rest of the sale money has been applied to the unpaid balance and what you owe. You will pay interest on that amount at the loan interest rate until the amount has been repaid.

| YEAR | MAKE | MODEL | IDENTIFICATION NUMBER | TYPE |
|---|---|---|---|---|
| 2002 | CHEVROLET | IMPALA LS | 2G1W855K729258625 | |

**OTHER**

You Pledge Shares and/or Funds of $ 0.00    In Account No.(s) 0    Key No.    This Agreement is governed by the State of Ohio.

SIGNATURE: By signing below, you agree to make and be bound by this Note and Security Agreement including terms and conditions on page 2 with specific reference to your responsibility to insure that the Credit Union is named as first lien holder on any certificate of title, if applicable. If you are not a borrower but an owner of the collateral for this loan, sign below and check the box for "Owner of Collateral". By doing so You agree only to the terms of the Security Agreement.
**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.**

| Borrower ALISA R JAMES | DATE | Borrower ☐ Owner of Collateral (other than a Borrower) | DATE |
|---|---|---|---|
| X /s/ Alisa R James (SEAL) | | X (SEAL) | |
| Borrower ☐ Owner of Collateral (other than a Borrower) | DATE | Witness | DATE |
| X (SEAL) | | X /s/ (SEAL) | |

Repossession paragraph occurs, the Credit Union can take the Collateral, without breach of the peace, and sell it to reduce your debt after giving you the proper notice or it can take advantage of any other rights and remedies given to secured parties under the Uniform Commercial Code or other applicable law. You agree: (a) to maintain, protect and to preserve the Collateral; (b) not to use or permit any one to use the Collateral in violation of this agreement or any statute, regulation or ordinance or any policy of insurance covering the Collateral; (c) to pay promptly when due all taxes, charges, encumbrances or liens now or later imposed upon or affecting the Collateral; (d) to notify the Credit Union promptly of any change of your name or address on file; (e) to help the Credit Union do all that is necessary to protect the Credit Union's security interest in the Collateral, including giving the Credit Union all endorsements, assignments, financing statements, or other writings which are necessary to protect the Credit Union's security interest and its priority; (f) not to sell, encumber, lease, rent, otherwise dispose of, or give the Collateral to anyone else other than the Credit Union; (g) to promptly deliver to the Credit Union in the form received, all proceeds of the Collateral you receive; (h) at any reasonable time, upon the Credit Union's demand, to exhibit to the Credit Union and allow the Credit Union to inspect the Collateral. You warrant that title to said collateral shall be registered in the name only of such Borrower/Borrowers signatory hereto. You promise to have the credit union's security interest shown on any certificate of title that may be issued. You give the credit union authorization to file a financing statement to protect its security interest from the claims of others. Secured party may act on any direction or authorization of any undersigned Borrower.

**PROPERTY INSURANCE AND TAXES:** You are required to fully insure the collateral against loss and damage and pay all taxes due. You may obtain this insurance through any insurance company of your choice, unless the Credit Union, for good cause, refused to accept it. You agree that if the Credit Union does not receive a copy if your policy within 30 days, and in deductible amounts acceptable, it is authorized to obtain any kind of insurance to protect the credit union from financial

**OTHER TERMS:** The credit union may delay taking any action to protect its rights as many times as it wants as long as it wants without losing them. If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect. All of the credit unions rights shall inure to the benefit of its successors and assigns and all of your obligations shall bind your heirs or legal representatives. The credit union reserves the right to impose a charge for statements regarding an accounting of its security interest.

**RIGHT OF OFFSET:** The Credit Union may at any time without demand or notice of any kind, appropriate and apply toward the payment of the unpaid balance due, any unpaid shares, dividends, or other funds that would not have adverse tax consequences. We appoint us as your Attorney-in-Fact to perform any act(s) which we feel are necessary to protect our security interest.

**RELEASE OF COLLATERAL:** If the Credit Union releases collateral for sale by you, proceeds will be applied to your loan. You understand that if a balance remains owing after sale proceeds are applied to your loan, you are obligated to continue making scheduled periodic payments in accordance with the payment schedule of your loan with the Credit Union. If the Credit Union incurs a fee to release its lien, we will draft your share or share draft account for the amount of the fee.

**GENERAL:** No waiver by Secured Party of any default shall operate as a waiver of any other default or of the same default on a future occasion. All rights of Secured Party hereunder shall inure to the benefit of its successors and assigns; and all obligations of Borrower shall bind his heirs, executors or administrators or his or its successors or assigns. If there is more than one Borrower, their obligations hereunder shall be joint and several.

**NOTICE:** You agree and attest that your name and address shown herein is your legal name and the place of your residence, and such address is the proper address for all notice(s) required by this Agreement, and you further understand that any changes in this address must be submitted to the credit union in writing to be effective.

## CERTIFICATE

STATE OF OHIO
COUNTY OF _____

BEFORE ME, the undersigned authority, on this day personally appeared

_____
known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

**\*FOR NOTARY USE ONLY\***

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this

_____ day of _____

Notary Public in & for the State of Ohio.

My Commission Expires: _____

Copyright 1997 ConmarSystems, Inc., Peachtree City, GA 30269 · EFORM 54287-4 Rev. 11/04 Form No. CE0803OH-FRCL

BFGFCU Copy- Page 5



EXHIBIT C

#8844587 dec/ras/jmn

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CASE NO. 10-54896 |
| | ) |
| ALISA R. JAMES | ) CHAPTER 7 |
| | ) |
| DEBTOR | ) JUDGE MARILYN SHEA-STONUM |
| | ) |
| | ) BFG FEDERAL CREDIT UNION'S |
| | ) RELIEF FROM STAY AND ABANDONMENT |
| | ) WORKSHEET |

I. LOAN DATA

    A. IDENTIFICATION OF COLLATERAL (check all that apply):

        ☐ Real Estate 2002 CHEVROLET IMPALA
            ☐ Principal Residence of Debtor(s)
            ☐ Other

        ☒ Personal Property 2002 CHEVROLET IMPALA
        ☐ Debtor's Chapter 13 Plan provides for surrender of the Collateral
        ☐ Other Property _____

    B. CURRENT VALUE OF COLLATERAL: $6,575.00

    C. SOURCE OF COLLATERAL VALUATION: NADA Book Value

    D. ORIGINAL LENDER: BFG Federal Credit Union

    E. ENTITY ENTITLED TO ENFORCE THE NOTE: BFG Federal Credit Union

    F. CURRENT LOAN SERVICER: BFG Federal Credit Union

    G. DATE OF LOAN: September 30, 2005

    H. ORIGINAL PRINCIPAL AMOUNT DUE UNDER NOTE: 11,200.00

    I. ORIGINAL INTEREST RATE ON NOTE: 5.49%

    J. CURRENT INTEREST RATE: 5.49%

    K. ORIGINAL MONTHLY PAYMENT AMOUNT
       (principal and interest only for mortgage loans): 222.00

    L. CURRENT MONTHLY PAYMENT AMOUNT: 222.00

M. CURRENT MONTHLY PAYMENT AMOUNT LISTED ABOVE:

- ☐ Includes an escrow amount of $_____ for real estate taxes.
- ☐ Includes an escrow amount of $_____ for property insurance.
- ☐ Includes an escrow amount of $_____ for _____.
- ☒ Does not include an escrow amount.

N. DATE LAST PAYMENT RECEIVED: September 27, 2010

O. AMOUNT OF LAST PAYMENT RECEIVED: $200.00

P. AMOUNT HELD IN SUSPENSE ACCOUNT: $0.00

Q. NUMBER OF PAYMENTS PAST DUE: 3

II. AMOUNT ALLEGED TO BE DUE AS OF THE DATE THE MOTION IS FILED

|   | Description of Charge | Total Amount of Charges | Number of Charges Incurred | Date Charges Incurred |
|---|---|---|---|---|
| A. | PRINCIPAL | $2,175.33 | | |
| B. | INTEREST | $23.88 | | |
| C. | TAXES | $ | | |
| D. | INSURANCE | $ | | |
| E. | LATE FEES | $22.20 | | |
| F. | NON-SUFFICIENT FUNDS FEES | $ | | |
| G. | PAY-BY-PHONE FEES | $ | | |
| H. | BROKER PRICE OPINIONS | $ | | |
| I. | FORCE-PLACED INSURANCE | $ | | |
| J. | PROPERTY INSPECTIONS | $ | | |
| K. | OTHER CHARGES (describe in detail and state contractual basis for recovering the amount from the debtor) | $ | | |

TOTAL DEBT: $2,221.41

LESS SUSPENSE BALANCE $0.00

TOTAL OF DUE AS OF DATE MOTION IS FILED: $2,221.41**
This cannot be relied upon as a payoff quotation.

This Worksheet was prepared by:

/s/ Jamie M. Nagle
Jamie M. Nagle, (0075205)
Attorney for BFG Federal Credit Union
Weltman, Weinberg & Reis Co., L.P.A.
323 W. Lakeside Avenue, Suite #200
Cleveland, OH 44113-1099
216-739-5121
ecfndoh@weltman.com